UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JEHAN ZEB MIR, M.D.,

                    Plaintiff,

v.

ROBERT BOGAN; PETER D. VAN
BUREN; KENDRICK A. SEARS, M.D.;
CLAUDIA HUTTON; NIRAV R. SHAH,
M.D.; LYON GREENBERG, M.D.; RALPH
LIEBLING, M.D.; DEBORAH WHITFIELD,
Ph.D.; LINDA SKIDMORE DAINES;
LINDA K. WHITNEY; KIMBERLY
KIRCHMEYER; SHARON LEE LEVINE,
M.D.; and MARY AGNES
MATYSZEWSKI,

                    Defendants.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 3 27 15

**MEMORANDUM
OPINION & ORDER**

13 Civ. 9172 (PGG)

PAUL G. GARDEPHE, U.S.D.J.:

        Pro se Plaintiff Jehan Zeb Mir brings this action against the Defendants –

individuals who are responsible for conducting disciplinary proceedings involving licensed

medical professionals in New York and California – in their individual capacities, seeking

money damages for claims arising out of the revocation of his license to practice medicine in

New York. Although the revocation of Mir's license in New York was predicated on the

revocation of his medical license in California, the proceedings in California are not the subject

of this case. See Am. Cmplt. (Dkt. No. 4) ¶¶ 194-195; N.Y. Pub. Health Law § 230(10)(p).

        Mir claims that the Defendants – in revoking and in allegedly conspiring to

revoke his license to practice medicine in New York – unlawfully discriminated against him and

denied him his constitutional right to due process. Mir asserts claims under 42 U.S.C. §§ 1981,

1983, 1985, and 1986, and 18 U.S.C. § 1964 – the Racketeering Influenced and Corrupt Organizations ("RICO") Act – and causes of action under New York law for (1) interference with prospective economic advantage, (2) defamation, (3) intentional infliction of emotional distress, (4) malicious prosecution, and (5) injurious falsehood.  (Am. Cmplt. (Dkt. No. 4))

Mir does not ask this Court to overturn the decision of the New York authorities to revoke his medical license in New York.  (Am. Cmplt. (Dkt. No. 4) at p. 105)  Instead, he seeks an award of money damages against the Defendants, in their individual capacities, based on allegedly unlawful actions they took in connection with the New York license revocation proceedings.[1]  Id.

The Defendants have moved to dismiss Mir's claims (see Dkt. Nos. 30, 37, 39), arguing, inter alia, that they are entitled to absolute immunity from suits for money damages, and that Mir has failed to state a claim.  (Def. Brs. (Dkt. Nos. 31, 37, 40)).

Mir has moved for sanctions against (1) Patti Ranger, Defendant Matyszewski's attorney; and (2) Defendants Greenberg and Hutton and their attorney – Rachel Pasternak – pursuant to Fed. R. Civ. P. 11, 28 U.S.C. § 1927, and this Court's "inherent powers."  (Dkt. Nos. 56, 58)  Mir claims that these Defendants and attorneys have made factual misrepresentations and frivolous, harassing legal arguments in their presentations to this Court.  (Pltf. Brs. (Dkt. Nos. 57, 59))

For the reasons stated below, the Defendants' motions to dismiss will be granted, and Mir's motions for sanctions will be denied.

---

[1] Although Mir has named as defendants certain individuals who played a role in the revocation of his license in California, his claims against those defendants are based solely on their alleged involvement in the revocation of his license in New York. See Am. Cmplt. (Dkt. No. 4) ¶¶ 15, 265.

2

## BACKGROUND[2]

### I. FACTUAL BACKGROUND AND PRIOR PROCEEDINGS

#### A. The June 2000 Incident

Plaintiff Jehan Zeb Mir is a board-certified surgeon, formerly licensed to practice

medicine in California and New York. (Am. Cmplt. (Dkt. No. 4) ¶¶ 21, 22, 29) Although Mir's

claims in this case are based on the revocation of his medical license in New York, the conduct

underlying that revocation occurred nearly fifteen years ago in California.

In June 2000, Mir was serving as a provisional member on the staff of Pomona

Valley Hospital in California, where he worked under the supervision of the hospital's regular

staff members and surgeons. (Id. ¶ 32) On June 8, 2000, while Mir was on duty in the

emergency room at the San Antonio Community Hospital, he treated an 81-year-old female

---

[2] The following facts are drawn from the Amended Complaint and are presumed true for purposes of resolving Defendants' motions to dismiss. See Kassner v. 2nd Ave. Delicatessen, Inc., 496 F.3d 229, 237 (2d Cir. 2007). In resolving Defendants' motion, the Court has also considered documents that are referenced and relied upon in the Amended Complaint, including the decision rendered by the New York State Department of Health's Board for Professional Medical Conduct (the "New York Medical Board"). See Am. Cmplt. (Dkt. No. 4) ¶¶ 252-263. "In assessing the legal sufficiency of [a plaintiff's] claim[s] [on a motion to dismiss,]" the court may "consider . . . the complaint and any documents attached thereto or incorporated by reference and 'documents upon which the complaint "relies heavily."'" Bldg. Indus. Elec. Contractors Ass'n v. City of New York, 678 F.3d 184, 187 (2d Cir. 2012) (quoting In re Citigroup ERISA Litig., 662 F.3d 128, 135 (2d Cir. 2011) (quoting DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 111 (2d Cir. 2010))). The Court also takes judicial notice of public filings in proceedings before the United States District Court for the Southern District of California, the United States District Court for the Southern District of New York, the California Court of Appeals, and the New York Medical Board. See Global Network Comm. Inc. v. City of New York, 458 F.3d 150, 157 (2d Cir. 2006) ("'[In deciding a motion to dismiss,] [a] court may take judicial notice of a document filed in another court not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings.'" (quoting Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A., Inc., 146 F.3d 66, 70 (2d Cir. 1998)).

3

patient suffering from severe circulation problems in one of her legs.[3] (Id. ¶¶ 33-34) Mir determined that the patient's leg required immediate attention and attempted to schedule emergency surgery at the San Antonio Community Hospital. (Id. ¶ 41) No anesthesiologist was available at that time, however, so Mir arranged to have the patient transferred to Pomona Valley Hospital. (Id. ¶¶ 41-44)

That night – at Pomona Valley Hospital – Mir performed the first of three surgeries on the patient's leg. (Id. ¶ 47) According to Mir, "the surgery was a complete success," and appeared to have successfully restored circulation to the leg. (Id. ¶ 50) Two days later, however – on June 10, 2000 – the patient's condition deteriorated, and Mir performed a second surgery on the same leg. (Id. ¶¶ 52-56) On June 12, 2000, Mir performed a third surgery in an attempt to restore circulation to the leg. (Id. ¶¶ 65-66) On June 14, 2000, however, the patient's leg developed gangrene, and Mir amputated the leg above the knee. (Id. ¶ 70)

As discussed below, Mir's treatment of this patient led to the revocation of his medical license in California and later, in New York. The license revocations, in turn, have led to a maelstrom of litigation that has continued for more than ten years.[4]

---

[3] The Amended Complaint does not explain how Mir's work at San Antonio Community Hospital relates to his employment at Pomona Valley Hospital.

[4] The California Court of Appeals has noted that Mir has a "proclivity to litigate vexatiously and repeatedly issues that have little or no merit, apparently hoping to exhaust his opponents." Mir v. Pomona Valley Hosp. Med. Ctr., No. B148849, 2003 WL 403301, at *17 (Cal. Ct. App. Feb. 24, 2003). "[T]he Ninth Circuit [has] affirmed a sanction award against [Mir] for filing and maintaining frivolous and harassing litigation." Mir v. Deck, No. SACV 12-1269 (RGK) (SH), 2013 WL 4857673, at *1 n.1 (C.D. Cal. Sept. 11, 2013) (citing Mir v. Little Co. of Mary Hosp., 844 F.2d 646, 653 (9th Cir. 1988)).

4

## B.     Proceedings Before the Medical Board of California and Subsequent Litigation

As a result of Mir's conduct in June 2000, Pomona Valley Hospital first suspended and then terminated Mir from its medical staff. (Id. ¶ 73, 78, 80) The hospital also reported its termination of Mir to the Medical Board of California, and the Medical Board conducted an investigation and filed charges against Mir for professional misconduct in connection with the June 2000 incident. (Id. ¶¶ 84-86, 86 n.9)

After a thirteen-day evidentiary hearing, in which Defendant Matyszewski served as prosecutor, an administrative law judge ("ALJ") found, inter alia, that Mir had "misdiagnosed [the] patient['s] . . . condition and therefore performed the wrong surgical procedure," and that Mir had "made false statements at his Medical Board interview and/or during the administrative hearing in this matter." In the Matter of the Accusation Against Jehan Zeb Mir, M.D., Case No. 09-20000-116300, ALJ Findings and Proposed Decision at 10, 22 (Med. Bd. Cal. Mar. 3, 2006). The ALJ determined that Mir's treatment of the patient reflected "gross negligence" and "incompetence," and that Mir had "knowingly made false statements" in connection with the Board's investigation and at the evidentiary hearing. Id. at 24-25. Based on the ALJ's findings, the Medical Board of California revoked Mir's medical license on December 6, 2006. (Am. Cmplt. (Dkt. No. 4) ¶ 124)

After multiple rounds of appeals in California state court, see Mir v. Superior Court, No. C061570, 2010 WL 602512, at *2-7 (Cal. Ct. App. Feb. 22, 2010), the Medical Board reconsidered its decision to revoke Mir's license and instead placed him on probation. (Am. Cmplt. (Dkt. No. 4) ¶¶ 165-167) Mir did not comply with the conditions of his probation, however, and accordingly, on August 19, 2012, the Medical Board again revoked his license to practice medicine in California. (Id. ¶ 183) That revocation was upheld by a judge sitting in the

5

Southern District of California, who denied Mir's claims for equitable relief. See Mir v. Med. Bd. of Cal., No. 12 Civ. 2340 (GPC) (DHB), 2013 WL 1932935 (S.D. Cal. May 8, 2013) (dismissing Mir's claims that the California revocation proceedings were discriminatory and denied him due process of law).

## C. New York Referral Proceedings and Subsequent Litigation

In December 2006 – after the initial revocation of Mir's medical license in California – the New York State Board of Professional Medical Conduct (the "New York Medical Board") brought a disciplinary proceeding against Mir based on the Medical Board of California's findings and revocation decision. (Am. Cmplt. (Dkt. No. 4) ¶¶ 194-195)

The New York authorities and Mir initially agreed to adjourn the hearing on the New York charges, pending Mir's appeal in California. (Id. ¶¶ 196-198) In the interim, Mir verbally agreed not to practice medicine in New York. (Id. ¶ 198)

After Mir's initial appeal in California was resolved, the New York Medical Board amended its charges against him (id. ¶ 209) and scheduled a hearing for September 17, 2008. (Id. ¶ 216) Shortly before the hearing date, however, Mir sought an adjournment due to continued proceedings in California. (Id. ¶ 218) The Medical Board informed Mir that it would not further adjourn the hearing absent a signed consent agreement with Mir, in which he agreed not to practice medicine in New York until the charges against him were resolved. (Id. ¶¶ 216, 218) Mir then petitioned the Commissioner of the New York State Department of Health – Defendant Daines – to stay the hearing; Daines did not respond to Mir's request. (Id. ¶ 221) On September 12, 2008, Mir signed the consent agreement, and the hearing was postponed pending resolution of the California proceedings. (Id. ¶ 234-240)

6

On multiple occasions in 2010, Mir contacted Defendant Shah – who succeeded Daines as Health Commissioner – requesting that any New York charges be dropped and the consent agreement rescinded, based on the reinstatement of his California medical license. (Id. ¶¶ 247-248, 250) Mir received no response to his inquiries. (Id.)

On July 22, 2011, Mir filed suit in the Southern District of New York against Shah and the New York Medical Board. (Id. ¶ 250) Mir alleged a violation of 42 U.S.C. § 1983, "claim[ing] that [d]efendants deprived him of his constitutional rights to due process and equal protection in a disciplinary proceeding initiated against him to revoke his license to practice medicine." Mir v. Shah, No. 11 Civ. 5211 (BSJ) (KNF), 2012 WL 3229308, at *1 (S.D.N.Y. Aug. 8, 2012), aff'd, 569 F. App'x 48 (2d Cir. 2014). Mir "also claimed that a section of New York's Public Health Law ('PHL') governing disciplinary proceedings against licensed medical professionals, PHL § 230(10)(p), is unconstitutional because it denies due process." Id. Defendants moved to dismiss. Id.

On August 8, 2012, the Honorable Barbara Jones issued an opinion holding that the Younger abstention doctrine barred Mir's "as applied" challenge to Section 230(10)(p). Judge Jones concluded that (1) the New York referral proceeding under Section 230(10)(p) constituted an "ongoing state proceeding" against Mir for purposes of Younger; (2) the licensing of medical professionals was "one of the most important of state interests"; and (3) that New York provided "adequate means for [Mir] to vindicate [his] federal constitutional rights," including an appeal to the administrative review board and an Article 78 proceeding. Id. at *3. Accordingly, Judge Jones concluded that abstention was appropriate with respect to Mir's "as applied" challenge to Section 230(10)(p). Id.

7

Judge Jones reached the merits of Mir's facial challenge to Section 230(10)(p),

however. Section 230(10)(p) authorizes "New York [to] use referral proceedings to revoke or

suspend a medical professional's license if he is found guilty of misconduct in another state that

would warrant such a penalty if committed in New York." Id. at *4. In discussing referral

proceedings under Section 230(10)(p), Judge Jones noted that although individuals who are the

subject of such a proceeding

> are afforded a hearing and opportunity to present witnesses and evidence, referral
> proceedings do not allow medical professionals to relitigate the charges
> prosecuted against them in other states. . . . This prohibition allows [hearing
> officers] to refuse to consider certain evidence in referral proceedings, such as the
> administrative record that [Mir] attempted to submit from his California
> disciplinary proceedings. . . . Referral proceedings, in this manner, bind medical
> professionals to the findings of another state's adjudicative body by adopting and
> applying those findings against those individuals in New York.

Id.

The court then considered Mir's due process challenge to such referral

proceedings:

> Principally, [Mir] argues that referral proceedings deny medical professionals a
> full and fair hearing, as required by the due process guarantee of the Fourteenth
> Amendment. [Mir] argues that a full and fair hearing is impossible when medical
> professionals are prohibited from having all evidence heard anew and all issues
> litigated anew, even if such evidence was already heard and such issues already
> litigated by another state's tribunal in a previous proceeding. The merits of
> [Mir's] facial challenge, consequently, depend upon whether prohibiting the
> relitigation of issues in referral proceedings under PHL § 230(10)(p) violates
> medical professionals' constitutional right to due process in all circumstances.

Id.

Judge Jones then conducted the three-prong due process analysis set forth in

Mathews v. Eldridge, 424 U.S. 319 (1976):

> Since a referral proceeding can deprive medical professionals of property rights in
> their licenses, due process is evaluated under the three[-]prong test of Mathews v.
> Eldridge, 424 U.S. 319 (1976). Under the Mathews test, due process depends on

8

a balancing of (1) the private interest in the property right at stake, (2) the risk of erroneous deprivation of that property right through the challenged procedures, and (3) the government interest in administering the property right and maintaining the challenged procedures. Mathews, 424 U.S. at 335. There is no doubt that medical professionals have a significant interest in their medical licenses since their livelihoods and quality of life depend on the ability to practice medicine legally. Nevertheless, PHL § 230(10)(p) comports with the due process guaranteed under the Fourteenth Amendment because this private interest is outweighed by the minimal risk of erroneous deprivation and strong government interest in referral proceedings.

Prohibiting relitigation in referral proceedings under PHL § 230(10)(p) does not pose a sufficient risk of erroneous deprivation of medical licenses. First and foremost, licensees are given a hearing before [a hearing officer], which is the most effective safeguard against erroneous deprivation. In addition, licensees are afforded opportunities to present evidence and witnesses as long as such opportunities are not used to rehash previous disciplinary proceedings in the state of the charged misconduct. Moreover, the limitation on licensees' ability to relitigate issues is counteracted by the requirement that an able and competent adjudicative body previously make factual findings about the misconduct at hand. . . . [F]urthermore, referral proceedings in no way prevent licensees from submitting a full record of evidence in the out-of-state proceeding where they are first disciplined. [Mir's] strongest argument is that erroneous deprivation would occur if [the New York Medical Board's] reliance on the integrity of out-of-state agencies in referral proceedings resulted in the enforcement of determinations from other states that were the product of unconstitutional adjudications. While this is a latent risk, such moderated prohibition of relitigation is permitted by the Fourteenth Amendment.

Concerning the government interest prong, New York's interest in regulating the practice of medicine within its borders is of utmost importance. . . . New York has both an institutional interest in maintaining the referral proceeding mechanism and a regulatory interest in the fitness of the medical professionals servicing its citizens. As with any adjudication, New York has an institutional interest in increasing the efficiency and decreasing the costs of its administrative proceedings. Referral proceedings accomplish this by allowing the state to reach its determinations without sacrificing the costs and time that would be required to hear the same facts and evidence already heard by a competent tribunal in another state. New York's regulatory interest in licensing medical professionals is paramount since the health and well-being of its citizens is essential to good government. Combined, New York's institutional and regulatory interest in the purpose and process of referral proceedings outweighs the minimal risk of erroneous deprivation and the private interest in medical licenses, despite the considerable significance of that property interest.

Id. at *4-5 (citations omitted).

9

The court went on to hold that "the referral proceedings of PHL § 230(10)(p)
provide medical professionals with the due process guaranteed by the Fourteenth Amendment."
Id. at *5. The court further found that Mir "ha[d] not pled any plausible circumstance, including
his own, where the Mathews analysis would result in a different conclusion[.]" Id. Judge Jones
therefore dismissed Mir's facial challenge to Section 230(10)(p). Id.

Mir appealed Judge Jones' determinations both as to Younger abstention and the
facial validity of Section 230(10)(p). Brief for Appellant at 36-45, 46-50, Mir v. Shah, 569 F.
App'x 48 (2d Cir. 2014) (No. 13-55). The Second Circuit affirmed by summary order. See Mir
v. Shah, 569 F. App'x 48 (2d Cir. 2014).

On August 23, 2012 – two weeks after the Shah opinion was issued and four days
after the Medical Board of California revoked Mir's medical license for the final time – the New
York Medical Board scheduled a hearing concerning the charges against Mir. The hearing date
was October 25, 2012. (Am. Cmplt. (Dkt. No. 4) ¶ 252) Mir claims that he did not receive
notice of the hearing, and he did not appear on October 25, 2012. (Id. ¶ 252, 254)

As required by Section 230(10)(e) of the Public Health Law, an administrative
officer conducted the hearing on October 25, 2012, concerning the charges against Mir. In re
Jehan Zeb Mir, M.D., Determination and Order N.Y. Med. Bd. #13-09, at 1 (State of N.Y.: Dep't
of Health Bd. for Prof'l Med. Conduct Dec. 27, 2012). The administrative officer "ruled that the
Board obtained jurisdiction over [Mir] by the service of the August 23, 2012 Notice of Referral
Proceeding and Statement of Charges at [Mir]'s last known address[,] [and] [t]he hearing
proceeded in [Mir's] absence." Id. At the hearing, certain documents – including the California
revocation decision – were received in evidence, but there was no witness testimony. Id. at 3.

10

On December 27, 2012, a three-member committee of the New York Medical

Board issued a decision finding that Mir had

> failed to appear, failed to file an answer and failed to submit any evidence or
> written argument to explain his conduct or provide mitigating evidence. The
> [hearing officer] ruled that the Petitioner held jurisdiction over [Mir] and that [his]
> failure to appear constituted a default. . . . The [hearing officer] ruled further that
> [Mir] failed to file an answer and that . . . the charges against [him] were deemed
> admitted . . . . The hearing proceeded in [Mir]'s absence and the Petitioner
> introduced eight documents into evidence, including three disciplinary orders
> from the California Board.
>
> The documentation before the Committee proved that the California Board
> disciplined [Mir] for practicing with gross negligence and with repeated negligent
> and incompetent acts, failing to maintain accurate patient records, knowingly
> making false statements and violating probation. The Committee concluded that
> [Mir]'s conduct in California, if committed in New York, would constitute
> misconduct as practicing fraudulently, practicing with negligence and
> incompetence on more than one occasion, practicing with gross negligence,
> engaging in conduct that evidenced moral unfitness, failing to maintain accurate
> patient records and violating probation.
>
> . . . .
>
> The Committee votes 3-0 to revoke [Mir]'s License. We conclude that [Mir]'s
> failure to address his deficiencies and admit his mistakes leaves [Mir] at risk to
> repeat his misconduct. . . . The Committee concludes that revocation provides the
> only penalty that will assure the protection of the citizens in this State.

In re Jehan Zeb Mir, M.D., Determination and Order New York Medical Board #13-09 at 6-7.

Accordingly, Mir's New York medical license was revoked. (Am. Cmplt. (Dkt. No. 4) ¶ 263)

Nothing in the record suggests that Mir appealed the New York Medical Board's

revocation decision to the administrative review board, see N.Y. Public Health Law § 230(10)(i),

(p), or that he instituted an Article 78 proceeding in New York Supreme Court challenging the

Medical Board's decision. See Shah, 2012 WL 3229308, at *3 (noting that Mir could obtain

review of Medical Board action before the administrative review board and in an Article 78

proceeding).

Mir filed this action on December 26, 2013.  (Cmplt. (Dkt. No. 1))

## II.  **PROCEDURAL HISTORY**

The Complaint in this matter named as defendants New York Medical Board and New York State Department of Health personnel who were involved in the referral proceedings against Mir, including Robert Bogan, Linda Skidmore Daines, Lyon Greenberg, Claudia Hutton, Ralph Liebling, Kendrick A. Sears, Nirav R. Shah, Peter D. Van Buren, and Deborah Whitfield (the "New York Defendants").  (Id.)

On April 21, 2014, Mir filed an Amended Complaint in which he adds as defendants several members of the Medical Board of California (Linda K. Whitney, Kimberly Kirchmeyer, and Sharon Lee Levine) and the prosecutor during the California revocation proceedings (Mary Agnes Matyszewski) (together, the "California Defendants").  (Am. Cmplt. (Dkt. No. 4))  Mir's claims against the California Defendants are based on their alleged involvement in the revocation of his medical license in New York.  (Id. ¶¶ 15, 265)  Although the Amended Complaint discusses the California license revocation proceedings at length, it also repeatedly states that the California Defendants "are sued solely for conspiring with [the] New York Defendants to discriminate and interfere with Plaintiff's right to practice medicine in New York, [and to prevent] a full and a fair hearing in N.Y. . . . in order to cover up their false, fraudulent charges, discrimination, [and] denial of [a] full and a fair hearing against Plaintiff in California."  (Id. ¶ 15; see id. ¶ 265 (the California Defendants "are NOT sued here for prosecuting false, fraudulent charges in California but . . . for conspiring with the [New York Defendants] to prevent Plaintiff from practicing in New York") (emphasis in original))

In the Amended Complaint, Mir alleges that all Defendants violated 42 U.S.C. § 1983 by intentionally interfering with his right to practice medicine in New York, in that the

12

Defendants "discriminated [against] Plaintiff as they discriminate [against] other members of the [Muslim] minority group in targeting [them] for investigation[], bring[ing] false, fraudulent charges [against them], conducting sham proceedings [concerning them], and [in] imposing [the] harshest penalties [on them]." (Id. ¶ 264) Reading the Amended Complaint liberally, it appears to assert two claims under Section 1983: (1) that the Defendants discriminated against Mir because he is a Muslim, in violation of the Fourteenth Amendment's Equal Protection Clause (id. ¶ 280); and (2) that the Defendants conspired to deprive Mir of a fair hearing, in violation of the Fourteenth Amendment's Due Process Clause. (Id. ¶¶ 281-313)

Mir also alleges that the Defendants violated the RICO statute, 18 U.S.C. § 1964, by conspiring to deprive him of his New York medical license through the commission of numerous predicate acts, including mail and wire fraud in connection with communications among themselves and with Mir. (Id. ¶¶ 319-417)

Mir further alleges that the Defendants violated 42 U.S.C. §§ 1981, 1985, and 1986, by conspiring "to deny Plaintiff [the] benefit of full and equal rights under the law" through the revocation of his medical license in New York. (Id. ¶¶ 418-422)

Finally, Mir alleges a number of state law claims premised on the revocation of his New York medical license, including (1) interference with prospective economic advantage, (2) defamation, (3) intentional infliction of emotional distress, (4) malicious prosecution, and (5) injurious falsehood. (Id. ¶¶ 423-437)

On August 27, 2014, the Defendants filed three separate motions to dismiss. (Dkt. Nos. 30 (New York Defendants), 37 (Matyszewski), 39 (Medical Board of California defendants)) All of the Defendants argue that (1) some or all of Mir's claims are time-barred; (2) they are immune from suit; (3) Mir has not stated a claim under §§ 1981, 1983, 1985, or 1986,

13

because he has not alleged facts showing (a) a violation of his constitutional rights, (b) discrimination, or (c) a conspiracy; (4) Mir has not stated a claim under the RICO statute, because he has not alleged an enterprise and his allegations as to predicate acts do not show a pattern of racketeering; and (5) Mir has failed to state a claim as to his state law causes of action. See Def. Brs. (Dkt. Nos. 31, 37, 40). Certain of the California Defendants also argue that this Court lacks personal jurisdiction over them and that – as to most of Mir's state law claims – they are immune from liability because of Mir's failure to comply with the California Government Claims Act. (Cal. Def. Br. (Dkt. No. 40) at 19-21, 26-31)

On October 14, 2014, Mir moved for sanctions against (1) Patti Ranger, Defendant Matyszewski's attorney; and (2) Defendants Greenberg and Hutton and their attorney – Rachel Pasternak – pursuant to Fed. R. Civ. P. 11, 28 U.S.C. § 1927, and this Court's "inherent powers." (Dkt. Nos. 56, 58) Mir claims, inter alia, that these Defendants and attorneys have misrepresented facts and made frivolous legal arguments in their submissions to this Court. (Pltf. Brs. (Dkt. Nos. 57, 59))

## DISCUSSION

## I.    LEGAL STANDARD ON A MOTION TO DISMISS

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). These factual allegations must be "sufficient 'to raise a right to relief above the speculative level.'" ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007) (quoting Twombly, 550 U.S. at 555). "In considering a motion to dismiss . . . the court is to accept as true all facts alleged in the complaint," Kassner v. 2nd Ave. Delicatessen Inc., 496 F.3d 229, 237 (2d

14

Cir. 2007) (citing Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals, 282 F.3d 83, 87 (2d Cir. 2002)), and must "draw all reasonable inferences in favor of the plaintiff." Id. (citing Fernandez v. Chertoff, 471 F.3d 45, 51 (2d Cir. 2006)).

A complaint is inadequately pled "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement,'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 557), and does not provide factual allegations sufficient "to give the defendant fair notice of what the claim is and the grounds upon which it rests." Port Dock & Stone Corp. v. Oldcastle Ne., Inc., 507 F.3d 117, 121 (2d Cir. 2007) (citing Twombly, 550 U.S. at 555).

"When determining the sufficiency of plaintiff['s] claim for Rule 12(b)(6) purposes, consideration is limited to the factual allegations in plaintiff['s] . . . complaint, . . . to documents attached to the complaint as an exhibit or incorporated in it by reference, to matters of which judicial notice may be taken, or to documents either in plaintiff['s] possession or of which plaintiff[ ] had knowledge and relied on in bringing suit." Brass v. Am. Film Tech., Inc., 987 F.2d 142, 150 (2d Cir. 1993) (citation omitted).

"A pro se litigant's submissions are held to 'less stringent standards than [those] drafted by lawyers.'" Whitfield v. O'Connell, No. 09 Civ. 1925 (WHP), 2010 WL 1010060, at *4 (S.D.N.Y. Mar. 18, 2010) (alterations in original) (quoting Haines v. Kerner, 404 U.S. 519, 520 (1972)). Where a "plaintiff is proceeding pro se, the Court construes the complaint liberally, 'interpret[ing] it to raise the strongest arguments that it suggests.'" Braxton v. Nichols, No. 08 Civ. 08568 (PGG), 2010 WL 1010001, at *1 (S.D.N.Y. Mar. 18, 2010) (internal citations omitted) (quoting Harris v. Westchester Cnty. Dep't of Corr., No. 06 Civ. 2011 (RJS), 2008 WL 953616, at *2 (S.D.N.Y. Apr. 3, 2008)). However, "the court need not accept as true 'conclusions of law or unwarranted deductions of fact.'" Whitfield, 2010 WL 1010060, at *4

15

(quoting First Nationwide Bank v. Gelt Funding Corp., 27 F.3d 763, 771 (2d Cir. 1994)); see

also Harris v. Mills, 572 F.3d 66, 72 (2d Cir. 2009) ("[T]hreadbare recitals of a cause of action,

supported by mere conclusory statements, do not suffice [to establish entitlement to relief].").

## II.    NEW YORK STATUTORY PROVISIONS CONCERNING MEDICAL LICENSE REVOCATION BASED ON DISCIPLINARY ACTION IN ANOTHER STATE

Mir's New York medical license was revoked pursuant to N.Y. Pub. Health Law

§ 230(10)(p). This provision authorizes New York to bring "cases of professional misconduct

based solely upon a violation of subdivision nine of section sixty-five hundred thirty of the

education law." N.Y. Pub. Health Law § 230(10)(p). N.Y. Educ. Law § 6530(9), in turn,

provides that it "is professional misconduct" to be

> found guilty of improper professional practice or professional misconduct by a
> duly authorized professional disciplinary agency of another state where the
> conduct upon which the finding was based would, if committed in New York
> state, constitute professional misconduct under the laws of New York state; [or]
>
> . . . .
>
> [to have one's] license to practice medicine revoked, suspended or hav[e] other
> disciplinary action taken . . . by a duly authorized professional disciplinary agency
> of another state, where the conduct resulting in revocation, suspension, or other
> disciplinary action . . . would, if committed in New York state, constitute
> professional misconduct under the laws of New York state[.]

N.Y. Educ. Law § 6530(9)(b), (d). Under New York law, "[p]racticing the [medical] profession

with negligence on more than one occasion[,] . . . with gross negligence on a particular

occasion[,] . . . with incompetence on more than one occasion[,] . . . [or] with gross

incompetence" all constitute "professional misconduct." N.Y. Educ. Law § 6530(3)-(6).

Where another state's "professional disciplinary agency" has found a New York-

licensed physician guilty of professional misconduct, or revoked the physician's license in that

state, "charges [may] be prepared and served" on the physician, and the matter "may [be]

16

refer[red] . . . to a committee on professional conduct for its review and report of findings, conclusions as to guilt, and determination." Id.; N.Y. Pub. Health Law § 230(10)(p). In connection with such charges, the physician is entitled to "appear personally before the committee on professional conduct." Id. At the hearing before the committee, "an administrative officer" is designated, who has "the authority to rule on all motions . . . [and] objections" made by the parties. N.Y. Pub. Health Law § 230(10)(e). The physician "may be represented by counsel and may present evidence or sworn testimony on his or her behalf." Id. § 230(10)(p). However – with one exception not relevant here – the "evidence or sworn testimony offered to the committee [is] strictly limited to evidence and testimony relating to the nature and severity of the penalty to be imposed" on the physician in New York. Id.

Accordingly, where a physician faces charges of professional misconduct based on discipline imposed by another State's "professional disciplinary agency," the New York Medical Board relies on "the findings of [that] state's adjudicative body by adopting and applying those findings against [the] individual[] in New York." Shah, 2012 WL 3229308, at *4. Relitigation in New York of the charges underlying the other state's disciplinary action is not permitted. See id.; see also N.Y. Pub. Health Law § 230(10)(p).

## III.   ABSOLUTE IMMUNITY

Mir has sued the Defendants in their individual capacities, seeking money damages. (Am. Cmplt. (Dkt. No. 4) ¶¶ 2-14, p. 105) All Defendants argue that they are absolutely immune from a suit for money damages based on their role in the New York medical license revocation proceeding at issue here. (Def. Brs. (Dkt. Nos. 31, 37, 40))

17

## A.    Absolute Immunity for Agency Officials

Where, as here, a plaintiff brings suit against "an official in [the official's] personal[ ]capacity," the official may assert any available "personal immunity defenses" as a "defense[] to liability." Ky. v. Graham, 473 U.S. 159, 166-67 (1985). One such defense is the doctrine of absolute immunity, which protects certain government officials from civil liability for any actions they undertake while performing their official duties. See Butz v. Economou, 438 U.S. 478 (1978); Imbler v. Pachtman, 424 U.S. 409, 429 (1976). The doctrine of absolute immunity arises from the "concern that harassment by unfounded litigation would cause a deflection of the [official's] energies from his public duties, and the possibility that he would shade his decisions instead of exercising the independence of judgment required by his public trust." Flagler v. Trainor, 663 F.3d 543, 546 (2d Cir. 2011) (discussing absolute immunity for prosecutors) (quotation omitted). The doctrine is "necessary to assure that [these officials] can perform their respective functions without harassment or intimidation." Butz, 438 U.S. at 512.

Absolute immunity traditionally was accorded only to judges and prosecutors. See id. at 508-12. The doctrine has been extended, however, to bar suits for money damages against agency officials who perform functions analogous to those of a prosecutor or judge. See id. at 512-17 ("agency [officials] are entitled to absolute immunity from damages liability for their" roles in the agency's adjudicative process). While the Second Circuit has held that state officials who are involved in direct medical license revocation proceedings under N.Y. Pub. Health Law § 230(10)(a)-(h) are entitled to absolute immunity, see Applewhite v. Briber, 506 F.3d 181, 182 (2d Cir. 2007) (per curiam), no court has yet addressed whether officials involved in referral proceedings under Section 230(10)(p) and N.Y. Educ. Law § 6530(9) are also entitled to absolute immunity.

18

"In determining whether officials acting pursuant to [various provisions of N.Y.

Pub. Health Law §] 230 should be granted absolute immunity," a court must "consider whether

[the Section] 230[] procedures [at issue] . . . share enough of the 'characteristics of the judicial

process,' and whether the officials themselves were functioning in a manner sufficiently

analogous to a judge or prosecutor." DiBlasio v. Novello, 344 F.3d 292, 297-98 (2d Cir. 2003)

(officials engaged in summary license suspension proceedings under Section 230(12) are not

entitled to absolute immunity, because "New York State's procedures governing summary

suspensions lack the hallmarks and safeguards of a judicial proceeding that would render

absolute immunity for those officials involved appropriate") (quoting Butz, 438 U.S. at 513). "In

evaluating the [disciplinary] process [at issue]," a court must "assess the six factors outlined in

Butz, that are 'characteristic[] of the judicial process.'" Id. at 298 (quoting Cleavinger v. Saxner,

474 U.S. 193, 202 (1985) (citing Butz, 438 U.S. at 512)) (alterations in DiBlasio). These factors

are

"(a) the need to assure that the individual can perform his functions without
harassment or intimidation; (b) the presence of safeguards that reduce the need for
private damages actions as a means of controlling unconstitutional conduct; (c)
insulation from political influence; (d) the importance of precedent; (e) the
adversary nature of the process; and (f) the correctability of error on appeal."

Id. (quoting Cleavinger, 474 U.S. at 202 (citing Butz, 438 U.S. at 512)).

In concluding that officials involved in direct license revocation proceedings

brought under N.Y. Pub. Health Law § 230(10)(a)-(h) are entitled to absolute immunity, the

Second Circuit stated that such immunity is appropriate

where . . . the individual charged has the right to be represented by counsel, to
present evidence and cross-examine witnesses, and where the board articulates its
findings and conclusions in a binding order – as opposed to a mere
recommendation – under a preponderance of the evidence standard.

19

Applewhite, 506 F.3d at 182 ("conclud[ing] that DiBlasio does not control here because

summary suspensions and revocations of medical licenses in New York involve altogether

separate and distinguishable proceedings").

                    Even before Applewhite, courts in this Circuit routinely granted absolute

immunity to officials involved in direct license revocation proceedings. For example, in

Ackerman v. State Bd. for Prof'l Med. Conduct, No. 83 Civ. 7871 (DNE), 1984 WL 1258, at *2-

3 (S.D.N.Y. Nov. 13, 1984), the court noted that

> [i]t is firmly established that judges are absolutely immune from damages
> liability for acts done in the course of their judicial functions. . . . Without such
> immunity, judges would lose that independence without which no judiciary can be
> either respectable or useful. . . . For similar reasons absolute immunity from suits
> for damages has been extended to federal prosecutors . . . and state prosecutors
> . . . .
>
> More recently, in Butz v. Economou, 438 U.S. 478 (1977), the Supreme Court
> granted absolute immunity from damages liability to hearing examiners and
> prosecutors associated with federal agencies. The Court in Butz reasoned that
> administrative adjudicatory proceedings are "functionally comparable to that of a
> judge." Id. at 513. Thus, absolute immunity was necessary to assure that the
> participants in the proceedings could "perform their respective functions without
> harassment or intimidation." Id. at 512. In addition, the Court found that the
> safeguards built into the adjudicatory process obviated "the need for private
> damages actions as a means of controlling unconstitutional conduct." Id.
>
> The reasoning of the Court in Butz applies to the instant case. The role of the
> State Board for Professional Medical Conduct is "functionally comparable" to
> that of a judicial proceeding. The charges the Board adjudicates are every bit as
> weighty as those which come before courts. Immunity is therefore necessary to
> protect hearing examiners and prosecutors from intimidation and harassment.
> Moreover, safeguards are built into the adjudicatorial process to eliminate the
> need for damages actions as a means of controlling unconstitutional conduct. The
> proceedings are adversarial in nature. . . . The licensee is entitled to offer oral or
> written evidence on his behalf and to cross-examine witnesses and examine
> evidence produced against him, a stenographic record of the hearings is required,
> and the licensee is entitled to know the findings and conclusions on all issues of
> fact and law.

Id. at *2-3.

Given these safeguards, the court concluded that officials involved in direct

medical license revocation proceedings in New York

> enjoy absolute immunity from a suit for damages. The Commissioner of Health
> of the State of New York . . . [also] cannot be held liable as the ultimate superior
> of the members of the panel for any action they took in their quasi-judicial
> capacity. The absolute immunity that protects the members of the panel reaches
> him, as well.

Id. at \*3; see also Yoonessi v. N.Y. State Bd. for Prof'l Med. Conduct, No. 03 Civ. 871 (WMS),

2005 U.S. Dist. LEXIS 40035 (W.D.N.Y. Mar. 21, 2005) (applying Butz factors in context of

direct license revocation proceedings; granting absolute immunity), aff'd, 162 F. App'x 63 (2d

Cir. 2006); Bloom v. N.Y. State Comm'r of Health, 573 F. Supp. 2d 732, 739-40 (E.D.N.Y.

2004) ("Undoubtedly, administrative law proceedings function in a comparable atmosphere and

adjudicate similar issues to those settled in judicial proceedings. . . . Indeed, administrative

proceedings are similar to judicial proceedings in that 'the disappointment occasioned by an

adverse decision, often finds vent in imputations of [malice].' . . . Therefore, this Court

recognizes that absolute immunity extends to certain state officials who take part in the [New

York Medical Board]'s disciplinary proceeding." (quoting Butz, 438 U.S. at 513) (first alteration

in original)).

## B.    Application of the Butz Factors to Proceedings Under N.Y. Pub. Health Law § 230(10)(p) and N.Y. Educ. Law § 6530(9)

The New York Medical Board revoked Mir's medical license in New York as a

result of professional discipline imposed by the Medical Board of California, a "professional

disciplinary agency of another state." See N.Y. Educ. Law § 6530(9)(b), (d); N.Y. Pub. Health

Law § 230(10)(p).

Although, as discussed below, a licensee in a Section 230(10)(p) proceeding has

many of the same rights a licensee would enjoy in a direct license revocation proceeding under

21

Section 230(10)(a)-(h), there are important differences. For example, there is no right to cross-examine witnesses under Section 230(10)(p), and in a Section 230(10)(p) proceeding the "evidence or sworn testimony offered to the committee on professional conduct shall be strictly limited to evidence and testimony relating to the nature and severity of the penalty to be imposed upon the licensee." N.Y. Pub. Health Law § 230(10)(p). Accordingly, in proceedings under Section 230(10)(p), there is no right to relitigate the charges that led to the adverse finding before the other state's "professional disciplinary agency." See Shah, 2012 WL 3229308, at *4. Instead, in referral proceedings under Section 230(10)(p), the committee relies on "the findings of another state's adjudicative body by adopting and applying those findings against [the] individual[] in New York." Id.

Because Mir's rights under Section 230(10)(p) are not identical to the rights enjoyed by licensees under Section 230(10)(a)-(h), Applewhite is not dispositive on the issue of whether the New York Defendants are entitled to absolute immunity. Accordingly, this Court must consider whether the provisions of Section 230(10)(p) satisfy the factors outlined in Butz that are "characteristic of the judicial process." See DiBlasio, 344 F.3d at 298.

## 1. The Need for the Official to Perform His Functions Without Harassment or Intimidation

As to the first factor, "there can be little doubt that a disciplinary proceeding" – like a proceeding under Section 230(10)(p) – "that can result in the revocation of a medical license is 'likely to stimulate harassment and intimidation in the form of a litigious reaction from [a] disappointed physician.'" Yoonessi, 2005 U.S. Dist. LEXIS 40035, at *43 (quoting DiBlasio, 344 F.3d at 298 (internal quotation marks omitted)). Indeed, in this very case, the New York Medical Board's decision to revoke Mir's license appears to have spurred him to file this lawsuit. Moreover, regulating the conduct of medical professionals is "one of [New York's] most

22

important . . . state interests," Shah, 2012 WL 3229308, at *3, and is critical to protecting the

health of its citizens. Accordingly, members of the New York Medical Board must be able to

"perform [their] functions without harassment or intimidation." Cleavinger, 474 U.S. at 202.

## 2.     Safeguards Reducing the Need for Private
## Damages Actions to Control Unconstitutional Conduct

Under Section 230(10)(p), Mir was entitled to, inter alia,

(1) written notice of the charges against him;

(2) written notice of the right to advice of counsel;

(3) the opportunity file a written answer to the charges;

(4) the opportunity to submit a brief and affidavits to the committee on professional
     conduct;

(5) a hearing on the charges, at which he could appear with his attorney[5];

(6) the opportunity to "present evidence or sworn testimony in his . . . behalf";

(7) preparation of a stenographic record of the hearing;

(8) a decision reflecting the committee's "findings, conclusions as to guilt, and
     determination"; and

(9) review by the "administrative review board for professional medical conduct."

---

[5] As discussed above, Mir has alleged that he did not receive notice of the revocation hearing.
(Am. Cmplt. (Dkt. No. 4) ¶ 252)  Were Mir asking this Court to overturn the revocation of his
medical license in New York, the issue of whether he received proper notice of the October 25,
2012 hearing would be of central concern.  Mir is not challenging the New York Medical
Board's decision to revoke his license, however.  Instead, Mir has sued the Defendants in their
individual capacities only (Am. Cmplt. (Dkt. No. 4) ¶¶ 2-14), and he seeks as relief an award of
money damages against them. (Id. at p. 105)  Accordingly, the Court need not address whether
Mir's claim that he did not receive notice of the New York revocation hearing would – in the
context of a challenge to the New York Medical Board's revocation decision – warrant a finding
that his due process rights were violated.

See N.Y. Pub. Health Law § 230(10)(p).[6]  The scope and breadth of these procedural safeguards

make Section 230(10)(p) proceedings much more similar to direct revocation proceedings than to

the summary suspension process discussed in DiBlasio.

In DiBlasio, the Second Circuit considered N.Y. Pub. Health Law § 230(12)(a),

which authorizes the Commissioner of the New York State Department of Health to summarily

suspend a physician's license,

> "after an investigation and a recommendation by [an investigative committee of the
> Medical Board], based upon a determination that a licensee is causing, engaging in or
> maintaining a condition or activity which in the commissioner's opinion constitutes an
> imminent danger [to the health of the people] and that it therefore appears to be
> prejudicial [to the interests of the people] to delay action until an opportunity for a
> hearing can be provided."

DiBlasio, 344 F.3d at 297 (quoting N.Y. Pub. Health Law § 230(12)(a)).

Prior to a summary suspension, "a committee on professional conduct of the state

board for professional medical conduct" must conduct an investigation and recommend

suspension.  The Medical Board must also interview the physician, who has a right to have

counsel and who "may submit written comments or expert opinion." Id. at 298.  Finally, the

physician has a right to a post-suspension hearing, after which the hearing committee can

"suggest" that the Commissioner revoke the suspension. Id. at 298-99; see N.Y. Pub. Health

Law § 230(12)(a).  However, "the commissioner is free to reject the hearing committee's

recommendation that the suspension be lifted." DiBlasio, 344 F.3d at 299.

The court in DiBlasio found these provisions inadequate to justify absolute

immunity for those involved in suspending DiBlasio, because they provide no real check on the

Commissioner's authority to suspend a physician's license and no meaningful avenue to

---

[6] These provisions also make clear that Section 230(10)(p) proceedings are in fact adversary
proceedings.  This is the fifth Butz factor.

24

challenge the Commissioner's decision. Id. at 299. The hearing committee can, at most, only suggest a course of action. Accordingly, the Commissioner has "virtually unfettered authority to determine whether a physician's license should be summarily suspended." Id. Given that the suspension turns on the Commissioner's essentially unreviewable "opinion," id. at 297, summary suspensions do not provide "meaningful safeguards against arbitrary executive action." Id. at 299.

Referral proceedings under Section 230(10)(p) are quite different. As discussed above, the licensee has a full panoply of procedural protections, including the right to (1) notice of the charges against him; (2) file a written answer to those charges; (3) submit a brief and affidavits addressing the charges; (4) a pre-deprivation hearing at which he may call witnesses and offer other evidence; (5) a stenographic record of the hearing; (6) a binding, reviewable order issued by the hearing committee reflecting the committee's findings; and (7) review by the administrative review board and/or through an Article 78 proceeding. See N.Y. Pub. Health Law § 230(10)(p).

These procedural protections are significantly more robust than those provided for in connection with summary suspensions. In the context of summary suspensions, "arbitrary executive action" cannot be controlled, because (1) the Commissioner is not bound by the findings of the hearing committee; (2) the Commissioner issues no binding order setting forth the Commissioner's findings and decision; and (3) the Commissioner's decision, while ultimately subject to a later determination of the misconduct charges, is itself subject to no meaningful review. DiBlasio, 344 F.3d at 299.

Proceedings under Section 230(10)(p) are thus much more similar to direct license revocation proceedings than they are to summary suspensions. In both direct and referral

25

revocation proceedings, "a board independent of the Commissioner . . . decides whether to revoke a medical license," whereas in summary suspensions, "the [C]ommissioner exercises her 'virtually unfettered authority' to accept the recommendation of the suspension hearing committee – a panel appointed predominantly by the [C]ommissioner. . . . Furthermore, in contrast to the administrative review available after [both a direct and referral] license revocation, . . . there is no 'meaningful review of the summary suspension because . . . the [C]ommissioner is free to ignore' any later recommendation by the same committee to terminate the suspension." Applewhite, 506 F.3d at 182 (quoting DiBlasio, 344 F.3d at 299). These differences led the Applewhite court to conclude that "DiBlasio does not control" in the context of a direct license revocation proceeding, and that absolute immunity is appropriate in that context. Id. Here, the procedural protections offered by Section 230(10)(p) likewise suggest that any unconstitutional conduct engaged in by an official can be adequately addressed through the license revocation process itself, and through review by the administrative review board and/or in an Article 78 proceeding.

The fact that a licensee in a Section 230(10)(p) referral proceeding (1) does not have a right of cross-examination, and (2) is precluded from relitigating issues resolved by the "authorized professional disciplinary agency of another state," does not counsel against a grant of absolute immunity. These matters go to the likelihood that a referral proceeding will result in an erroneous deprivation of a physician's license. The key question for determining whether absolute immunity is appropriate, however, is whether a damages action against individual officials is necessary to address any possible unconstitutional conduct by these officials. See

26

Cleavinger, 474 U.S. at 202 (requiring "safeguards that reduce the need for private damages actions as a means of controlling unconstitutional conduct").[7]

            In sum, given the procedural protections set forth in Section 230(10)(p), any unconstitutional conduct engaged in by New York Medical Board officials would likely be recorded, preserved, and appealable in the normal course of the revocation proceedings, or in an Article 78 proceeding. Accordingly, this Court concludes that Section 230(10)(p) contains sufficient "safeguards that reduce the need for private damages actions as a means of controlling unconstitutional conduct." Cleavinger, 474 U.S. at 202.

---

[7] In any event, in Shah, 2012 WL 3229308, Judge Jones considered the likelihood that application of Section 230(10)(p)'s procedures might lead to an erroneous deprivation of a physician's license. After acknowledging the significant private interest that physicians have in their medical licenses, Judge Jones concluded that Section 230(10)(p) "comports with due process . . . because this private interest is outweighed by the minimal risk of erroneous deprivation and strong government interest in referral proceedings":

> Prohibiting relitigation in referral proceedings under PHL § 230(10)(p) does not pose a sufficient risk of erroneous deprivation of medical licenses. First and foremost, licensees are given a hearing before [a hearing officer], which is the most effective safeguard against erroneous deprivation. In addition, licensees are afforded opportunities to present evidence and witnesses as long as such opportunities are not used to rehash previous disciplinary proceedings in the state of the charged misconduct. Moreover, the limitation on licensees' ability to relitigate issues is counteracted by the requirement that an able and competent adjudicative body previously make factual findings about the misconduct at hand . . . . [F]urthermore, referral proceedings in no way prevent licensees from submitting a full record of evidence in the out-of-state proceeding where they are first disciplined. [Mir's] strongest argument is that erroneous deprivation would occur if [the New York Medical Board's] reliance on the integrity of out-of-state agencies in referral proceedings resulted in the enforcement of determinations from other states that were the product of unconstitutional adjudications. While this is a latent risk, such moderated prohibition of relitigation is permitted by the Fourteenth Amendment.

Shah, 2012 WL 3229308, at *4-5. Mir challenged Judge Jones's due process analysis on appeal, Brief for Appellant at 46-50, Mir v. Shah, 569 F. App'x. 48 (2d Cir. 2014) (No. 13-55), but the Second Circuit affirmed. Mir, 569 F. App'x 48.

### 3.   Insulation from Political Influence and Correctability of Error on Appeal

As to the remaining <u>Butz</u> factors, referral proceedings under Section 230(10)(p) share the same characteristics as direct license revocation proceedings. With regard to insulation from political influence, the only apparent risk comes from the Commissioner herself, who has "appointment and removal powers [as to] eighty percent of" the Board. <u>DiBlasio</u>, 344 F.3d at 299. Given this structure, the <u>DiBlasio</u> court found – in the context of summary suspensions under Section 230(12) – that the "the independence of [the hearing committee] is severely undermined." <u>Id.</u> "[U]nlike [in] the summary proceeding at issue in <u>DiBlasio</u>, [however,] [here] there are internal and external safeguards against the potential for improper influence in disciplinary proceedings." <u>Yoonessi</u>, 2005 U.S. Dist. LEXIS 40035, at *46. While in a summary proceeding the hearing committee only makes a recommendation as to what action the Commissioner should take, "[t]he hearing committee in a disciplinary proceeding makes a [binding] determination . . . and is thus assured at the outset of its ability to render an independent decision." <u>Id.</u> Moreover, unlike a summary suspension, the hearing committee's determination in a Section 230(10)(p) proceeding can be appealed to the administrative review board. <u>See</u> N.Y. Pub. Health Law § 230(10)(p). "The review board is appointed by the governor, not the Commissioner," and thus provides further insulation from any influence that the Commissioner may have on the hearing committee's proceedings. <u>Yoonessi</u>, 2005 U.S. Dist. LEXIS 40035, at *46.

With regard to the correctability of any error on appeal, as the <u>Shah</u> court found, licensees can seek review of a license revocation before the administrative review board, and can "also bring an Article 78 proceeding in the Appellate Division of the New York Supreme Court, a proceeding which has repeatedly been held an adequate forum for addressing federal

28

constitutional claims," such as those asserted by Mir here. Shah, 2012 WL 3229308, at *3.

Accordingly, a licensee such as Mir has multiple meaningful avenues of review through which a license revocation under Section 230(10)(p) may be challenged.[8]

\*     \*     \*     \*

Analysis of the Butz factors demonstrates that proceedings under Section 230(10)(p) "share enough of the 'characteristics of the judicial process'" to merit absolute immunity for those officials engaged in such proceedings. See DiBlasio, 344 F.3d at 297 (quoting Cleavinger, 474 U.S. at 202 (citing Butz, 438 U.S. at 513)). Immunity is "necessary to assure that [officials involved in the revocation of medical licenses] can perform their respective functions without harassment or intimidation." Butz, 438 U.S. at 512. Permitting civil damage suits to proceed against such officials based on their role in revocation proceedings would severely undermine "one of [New York's] most important . . . state interests," Shah, 2012 WL 3229308, at *3 – its ability to license and discipline medical professionals and thereby to safeguard the public health. Individuals charged with this responsibility cannot be expected to properly perform their duties if they have a well-founded fear of retaliatory litigation. Accordingly, referral proceedings brought under N.Y. Pub. Health Law § 230(10)(p) merit absolute immunity for those officials involved in such proceedings who are "functioning in a manner sufficiently analogous to [that of] a judge or prosecutor." DiBlasio, 344 F.3d at 297-98 (citing Butz, 438 U.S. at 513).

---

[8] As to the Butz factor regarding the importance of precedent, "[e]xcept with regard to procedural issues, it is unlikely that legal precedent will factor large in a medical disciplinary proceeding." Yoonessi, 2005 U.S. Dist. LEXIS 40035, at *45. Accordingly, this is a neutral factor for purposes of determining whether absolute immunity is appropriate for officials engaged in a proceeding under Section 230(10)(p).

## C.     Whether the Agency Officials Functioned in a
## Manner Analogous to that of a Prosecutor or Judge

Once a court has determined that the proceedings at issue "share enough of the

'characteristics of the judicial process'" to merit absolute immunity, the court must "look to

whether the actions taken by the official[s] are 'functionally comparable' to th[ose] of a

prosecutor or judge." DiBlasio, 344 F.3d at 297 (quoting Butz, 438 U.S. at 513).   Where

"[a]gency officials perform[] . . . functions analogous to those of a prosecutor" or "perform[]

adjudicatory functions" similar to those of a judge, they "are entitled to absolute immunity for

damages liability." Butz, 438 U.S. at 514-15.

In the context of revocation proceedings before the New York Medical Board,

courts in this Circuit have found that "members of the [Committee that decided to revoke the

license,] the . . . state administrative prosecutor . . . [,] and [t]he Commissioner of Health of the

State of New York" are all entitled to absolute immunity. Ackerman, 1984 WL 1258, at \*3; see

Bloom, 573 F. Supp. 2d at 739-40 (granting absolute immunity to hearing officer for revocation

proceeding and to state administrative prosecutor); Anghel v. N.Y. State Dep't of Health, 947 F.

Supp. 2d 284, 299-300 (E.D.N.Y. 2013) (granting absolute immunity to director of Medical

Board and to investigator, prosecutor, and witnesses involved in medical license revocation

hearing); see also Olsen v. Idaho State Bd. of Med., 363 F.3d 916, 920-21, 928-29 (9th Cir.

2004) (granting absolute immunity to executive director of Idaho Medical Board and Board

members who were involved in denying physician's request for license reinstatement); O'Neal v.

Miss. Bd. of Nursing, 113 F.3d 62, 66 (5th Cir. 1997) (granting absolute immunity to executive

director of the Mississippi Board of Nursing and Board members who were involved in revoking

nurse's license); Bettencourt v. Bd. of Registration in Med. of Commonwealth of Mass., 904

F.2d 772, 782-84 (1st Cir. 1990) (granting absolute immunity to chairman and members of

30

Massachusetts Medical Board based on their role in adjudicating misconduct charges against physicians).

### 1.    The New York Defendants

The New York Defendants, with the exception of Defendant Hutton,[9] all played roles in Mir's license revocation proceeding that merit absolute immunity. Each acted as a "member[] of the Panel [that decided to revoke Mir's license,] [as a] state administrative

---

[9] As to Defendant Hutton, Mir alleges only that

[o]n or about June 16, 2008, Defendant Claudia Hutton, Director Public Affair Group, State of New York Department of Health issued [a] Public Press Release that out of State disciplined physicians can challenge that the out of State disciplinary findings were not supported by evidence.

[] [I]n June 2008, Plaintiff wrote [a] letter to Defendant Claudia Hutton to provide him information she had released to the public in Press Release that in a referral proceeding out of state physicians can challenge the out of state decision for lack of evidence and the source of such information.

[] Defendant Claudia Hutton conspired with the rest of the Defendants and exhibited a pattern maintained by other Defendants to prevent Plaintiff from having a full and a fair hearing in New York . . . , thus obstructing justice.

[] After failing to hear from her, Plaintiff called the Offices of Claudia Hutton several times. Defendant Hutton would not respond to [Plaintiff's] letter or return calls and Plaintiff was falsely told by her staff that she no longer worked there even though she continued to work in that office till 2011.

[] Defendant Claudia Hutton went one step further and in conspiracy with the rest of Defendants removed evidence of the Press Release on this subject from the State of N.Y. Website. What she could not remove was actual reporting by other reporters in the press itself and Plaintiff had a hard copy of that Press Release.

(Am. Cmplt. (Dkt. No. 4) ¶¶ 211-215; see id. ¶¶ 229, 299-301 (repeating allegations))

It is not clear from these allegations what role Mir believes Defendant Hutton played in causing his alleged injuries. What is clear is that Mir has not pled sufficient facts to demonstrate a plausible cause of action against Hutton. Accordingly, his claims against her will be dismissed for failure to state a claim.

prosecutor[, as] [t]he Commissioner of Health of the State of New York," or otherwise served as a "superior" of the members of the panel that revoked Mir's license. Ackerman, 1984 WL 1258, at *3.

Defendants Greenberg, Whitfield, and Liebling "served as the Committee in [Mir's] hearing" and made the decision to revoke Mir's license. In re Jehan Zeb Mir, M.D., Determination and Order N.Y. Med. Bd. #13-09 at 1. Defendants Bogan and Van Buren served prosecutorial roles in preparing and initiating the charges that resulted in Mir's license being revoked. (Am. Cmplt. (Dkt. No. 4) ¶ 194; id. ¶ 209 ("Defendant Bogan and Defendant Van Buren prepared and served [the] Amended Statement of Charges")). Defendants Shah and Daines both served as Health Commissioner. See Shah, 2012 WL 3229308, at *1; Am. Cmplt. (Dkt. No. 4) ¶¶ 221, 250. Finally, Defendant Sears served as the Chairman of the New York Medical Board.[10] Each of these Defendants is entitled to absolute immunity for actions they took

---

[10] As discussed above, after Mir's initial appeal in California was resolved, the New York Medical Board amended the charges against him and scheduled a hearing on those charges. (Am. Cmplt. (Dkt. No. 4) ¶ 216) Mir sought an adjournment of the hearing due to continued proceedings in California. (Id. ¶ 218) In exchange for granting the adjournment, the Medical Board insisted that Mir enter into a consent agreement in which he agreed not to practice medicine in New York until the charges against him were resolved. Mir signed the agreement, and the hearing was postponed. (Id. ¶¶ 234-40) Mir alleges that Sears signed the consent agreement

> as Chairman [of the] State Board Professional Medical Conduct when Defendant Sears should have known about the relevant N.Y. state law, investigative committee's function and authority to investigate. . . . Defendant Kend[r]ick A[.] Sears like the rest of the Defendants with malice showed deliberate indifference to Plaintiff's rights and immunities under the N.Y. State Law, N.Y. State Constitution and U.S. Constitution.

(Am. Cmplt. (Dkt. No. 4) ¶ 239)

To the extent Mir's claims against Sears are premised on his supervisory role in signing the consent agreement, Sears is entitled to absolute immunity. The consent agreement was a preliminary step in the process of prosecuting the misconduct charges against Mir. See Olsen, 363 F.3d at 928-29 (9th Cir. 2004) (granting absolute immunity to members and executive

in connection with the license revocation proceedings against Mir. See Ackerman, 1984 WL 1258, at *3 ("The absolute immunity that protects the members of the panel reaches" the "superior[s] of the members of the panel" as well. (citing Butz, 438 U.S. at 508-17)); Olsen, 363 F.3d at 920-21, 928-29; O'Neal, 113 F.3d at 66; Bettencourt, 904 F.2d at 782-84. Accordingly, Mir's claims against the New York Defendants will be dismissed.

## 2. The California Defendants

The California Defendants also argue that they are entitled to absolute immunity. (Cal. Def. Br. (Dkt. No. 37) at 11-15; Cal. Def. Br. (Dkt. No. 40) at 10-15) However, Mir's claims in this case are based solely on conduct related to the New York license revocation proceedings (see Am. Cmplt. (Dkt. No. 4) ¶¶ 15, 265), and Mir has pled no facts suggesting that the California Defendants played a role in the New York license revocation proceeding against him. Given that the California Defendants played no role in the New York license revocation proceedings, they are not entitled to absolute immunity. As discussed below, however, they are entitled to a dismissal of the claims against them for failure to state a claim.

## IV. FAILURE TO STATE A CLAIM AS TO THE CALIFORNIA DEFENDANTS

Mir alleges that the California Defendants violated 42 U.S.C. § 1983 by (1) conspiring to discriminate against him – as a Muslim – in connection with the revocation of his medical license in New York, in violation of the Fourteenth Amendment's Equal Protection Clause (Am. Cmplt. (Dkt. No. 4) ¶ 280), and (2) by conspiring to deny him a fair hearing in connection with the New York license revocation proceedings, in violation of the Fourteenth

director of the Idaho Medical Board for the "procedural steps involved in the eventual decision denying Olsen her license reinstatement"; Board's "letter indicating its intent to deny reinstatement [and its] decision not to hold a further hearing" were procedural steps "inextricably intertwined with the [Board's] adjudicative functions").

33

Amendment's Due Process requirements. (Id. ¶¶ 281-313) Mir also alleges that the California

Defendants violated the RICO statute, 18 U.S.C. § 1964, by conspiring to deprive him of his

New York medical license and by committing, among other predicate acts, mail and wire fraud.

(Id. ¶¶ 319-417) Mir further alleges that the California Defendants violated 42 U.S.C. §§ 1981,

1985, and 1986, by conspiring "to deny [him] [the] benefit of full and equal rights under the law"

through the revocation of his medical license in New York. (Id. ¶¶ 418-422) Mir also alleges a

number of state law claims against the California Defendants.

   All of Mir's claims require factual allegations demonstrating the personal

involvement of the California Defendants. See Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994)

("It is well settled in this Circuit that 'personal involvement of defendants in alleged

constitutional deprivations is a prerequisite to an award of damages under § 1983.'" (quoting

Moffitt v. Town of Brookfield, 950 F.2d 880, 885 (2d Cir. 1991))); DeFalco v. Bernas, 244 F.3d

286, 306 (To establish a civil RICO claim, "a plaintiff must show '(1) conduct (2) of an

enterprise (3) through a pattern (4) of racketeering activity.' . . . The[se] requirements . . . must

be established as to each individual defendant." (quoting Sedima, S.P.R.L. v. Imrex Co., 473

U.S. 479, 496 (1985)) (emphasis added)); United Bhd. of Carpenters and Joiners of Am. v. Scott,

463 U.S. 825, 828 ("[T]o make out a violation of § 1985(3), . . . the plaintiff must allege[, inter

alia,] a conspiracy[.]"); Mian v. Donaldson, Lufkin & Jenrette Sec. Corp., 7 F.3d 1085, 1088 (2d

Cir. 1993) ("[A] § 1986 claim must be predicated upon a valid § 1985 claim."); Gen. Bldg.

Contractors Ass'n, Inc. v. Pa., 458 U.S. 375, 391 (1982) (concluding "that § 1981 . . . can be

violated only by purposeful discrimination" by a defendant).

   As discussed above, the Amended Complaint repeatedly states that Mir's claims

against the California Defendants are based solely on their alleged conspiracy with the New

34

York Defendants to revoke Mir's New York medical license. See Am. Cmplt. (Dkt. No. 4) ¶ 15 (California Defendants "are sued solely for conspiring with New York Defendants to discriminate and interfere with Plaintiff's right to practice medicine in New York, [and] prevention of a full and a fair hearing in N.Y. . . . in order to cover up their false, fraudulent charges, discrimination, [and] denial of [a] full and a fair hearing against Plaintiff in California"); id. ¶ 265 (California Defendants "are NOT sued here for prosecuting false, fraudulent charges in California but . . . for conspiring with the [New York Defendants] to prevent Plaintiff from practicing in New York") (emphasis in original). Accordingly, Mir's claims against the California Defendants are only viable to the extent that he has pled facts demonstrating that they were involved in a conspiracy with the New York Defendants to deprive him of his New York medical license.

Almost all of Mir's allegations concerning the California Defendants, however, relate to their conduct in connection with the license revocation proceedings before the Medical Board of California.[11]  See, e.g., Am. Cmplt. (Dkt. No. 4) ¶¶ 85-185, 210, 251, 266-279.  To the

---

[11]  Any claims against the California Defendants based on the California license revocation proceedings would appear to be barred by res judicata. As discussed above, Mir sued the Medical Board of California and Defendants Whitney and Levine in the Southern District of California alleging that he was discriminated against on the basis of his race, and that the California license revocation proceedings did not comport with due process. See Mir v. Med. Bd. of Cal., 2013 WL 1932935, at *1-2.  The district court dismissed Mir's action, finding that his allegations "d[id] not suggest a plausible § 1983 claim," and that he had "failed to state a claim for a violation of his Fourteenth Amendment right to procedural due process." Mir, 2013 WL 1932935, at *8.  Although Defendants Matyszewski and Kirchmeyer were not named in the Southern District of California lawsuit, they appear to be in privity with the Medical Board, Whitney, and Levine such that Mir's claims against them would likewise be barred by res judicata. See Discon Inc. v. NYNEX Corp., 86 F. Supp. 2d 154, 166 (W.D.N.Y. 2000) ("Although [defendants] w[ere] not named . . . in [the prior] suit . . . , the pleadings [of a conspiracy among the defendants] are sufficient to support a finding of privity – i.e., the legal conclusion that the relationship between the parties is sufficiently close to warrant claim preclusion. Courts have held that alleged co-conspirators are 'in privity' with one another for res judicata purposes." (citation omitted)).

35

extent Mir pleads allegations against the California Defendants relating to the New York license revocation proceeding, his allegations are not sufficient to state a claim. Although Mir repeatedly alleges that the California Defendants conspired or otherwise acted in concert with the New York Defendants to unconstitutionally revoke his medical license in New York, see id. ¶¶ 15, 84, 192, 213, 215, 217, 223, 228, 236, 255, 261, 264, 265, 280, 301, 308, 321, 324, 396, 398-402, 408-416, 418-420, he pleads no facts in support of his naked, conclusory allegations.

Allegations that the California Defendants mailed copies of Medical Board decisions to the New York authorities (see Am. Cmplt. (Dkt. No. 4) ¶¶ 363, 368, 375, 384) are not sufficient to plausibly allege that they had entered into a conspiracy with the New York Defendants to violate Mir's constitutional rights. The fact that the New York authorities scheduled a hearing date on the New York charges against Mir four days after his license was revoked in California (see id. ¶ 310) likewise does not demonstrate an illegal conspiracy. Similarly, the fact that Matyszewski asked Mir during the California proceedings where else he was licensed to practice medicine (id. ¶¶ 192-93) does not constitute evidence that she had entered into a conspiracy with the New York Defendants to violate Mir's rights. Finally, Mir's naked allegation that the "N.Y. Defendants were constantly in touch with [the] California Defendants by phone and by mail" (see id. ¶ 290) is not sufficient to plausibly allege a conspiracy.

While Mir's pro se status requires this Court to read his pleadings liberally, it does not exempt him from the rule that a complaint is inadequately pled "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 557) This description aptly fits Mir's allegations concerning the California Defendants' alleged conspiracy with the New York Defendants to violate Mir's

constitutional rights by revoking his New York medical license. Mir's claims against the
California Defendants will be dismissed.

## V.    LEAVE TO AMEND

District courts "ha[ve] broad discretion in determining whether to grant leave to
amend." Gurary v. Winehouse, 235 F.3d 793, 801 (2d Cir. 2000). Leave to amend may properly
be denied in cases of "'undue delay, bad faith, or dilatory motive on the part of the movant,
repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the
opposing party by virtue of the allowance of the amendment, futility of amendment, etc.'"
Ruotolo v. City of N.Y., 514 F.3d 184, 191 (2d Cir. 2008) (quoting Forman v. Davis, 371 U.S.
178, 182 (1962)); see also Murdaugh v. City of N.Y., No. 10 Civ. 7218 (HB), 2011 WL
1991450, at *2 (S.D.N.Y. May 19, 2011) ("Although under Rule 15(a) of the Federal Rules of
Civil Procedure leave to amend complaints should be 'freely given,' leave to amend need not be
granted where the proposed amendment is futile." (citations omitted)). "'A pro se complaint is
to be read liberally," however, and a "court should not dismiss without granting leave to amend
at least once when a liberal reading of the complaint gives any indication that a valid claim might
be stated.'" Cuoco v. Moritsugu, 222 F.3d 99, 112 (2d Cir. 2000) (quoting Gomez v. USAA
Fed. Sav. Bank, 171 F.3d 794, 795 (2d Cir. 1999)).

Here, there is no reason to believe that the deficiencies in Mir's claims can be
cured through re-pleading. Because the New York Defendants are entitled to absolute immunity,
leave to amend as to them would be futile. As to the California Defendants, Mir has not pled
sufficient facts to "'give[] any indication that a valid claim might be stated.'" In re
IAC/Interactive Corp. Sec. Litig., 478 F. Supp. 2d 574, 596 (S.D.N.Y. 2007) (quoting Van
Buskirk v. The N.Y. Times Co., 325 F.3d 87, 91 (2d Cir. 2003)). Where repleading would be

37

futile, leave to amend should be denied. Cuoco, 222 F.3d at 112. Accordingly, Mir's claims will be dismissed without leave to amend.

## VI.    MIR'S MOTIONS FOR SANCTIONS

Mir asks this Court to impose sanctions on Defendant Matyszewski's attorney –
Patti Ranger – as well as on Defendants Greenberg and Hutton and their attorney – Rachel
Pasternak – pursuant to Fed. R. Civ. P. 11, 28 U.S.C. § 1927, and this Court's "inherent powers."
(Dkt. Nos. 56, 58) Mir claims that these defendants and attorneys have made sanctionable
misrepresentations of fact and frivolous legal arguments in their presentations to this Court.
(Pltf. Brs. (Dkt. Nos. 57, 59))

"On motion or its own initiative, [a] court may, after notice and an opportunity to
respond, impose sanctions for violations of Rule 11(b)." Siegel v. Pro-Ex Sec., No. 02 Civ. 610
(DLC), 2002 WL 1203851, *2 (S.D.N.Y. June 3, 2002). In signing a pleading or other court
filing, an attorney

[is] certif[ying] that to the best of the person's knowledge, information, and
belief, formed after an inquiry reasonable under the circumstances:

(1) it is not being presented for any improper purpose, such as to harass, cause
unnecessary delay, or needlessly increase the cost of litigation;

(2) the claims, defenses, and other legal contentions are warranted by existing
law or by a nonfrivolous argument for extending, modifying, or reversing
existing law or for establishing new law; [and]

(3) the factual contentions have evidentiary support or, if specifically so
identified, will likely have evidentiary support after a reasonable
opportunity for further investigation or discovery. . . .

Fed. R. Civ. P. 11(b). "In determining whether a signer has violated Rule 11, a district court
applies an objective standard of reasonableness." Derechin v. State Univ. of N.Y., 963 F.2d 513,
516 (2d Cir. 1992).

38

"Although a represented party does not personally present a pleading to the court,

the client can be held responsible for the Rule 11 violation in appropriate circumstances."

Watkins v. Smith, No. 12 Civ. 4635 (DLC), 2013 WL 655085, at \*10 (S.D.N.Y. Feb. 22, 2013),

aff'd, 561 F. App'x 46 (2d Cir. 2014).

"The Second Circuit has offered the following guidance on when it is

appropriate to sanction a represented party":

> "[W]here the party . . . know[s] that the filing and signing is wrongful and the
> attorney reasonably should know, then sanctions against both are appropriate.
> Where a party misleads an attorney as to facts or the purpose of a lawsuit, but the
> attorney nevertheless had an objectively reasonable basis to sign the papers in
> question, then sanctions on the party alone are appropriate."

Id. at \*11 (quoting Calloway v. Marvel Entm't Grp., 854 F.2d 1452, 1474-75 (2d Cir. 1988),

rev'd in part sub nom. on other grounds, Pavelic & LeFlore v. Marvel Entm't Grp., 493 U.S. 120

(1989)). "[R]egardless of the client's knowledge, [however,] a court may not impose a monetary

sanction 'against a represented party for violating Rule 11(b)(2).'" Id. at \*11 (quoting Fed. R.

Civ. P. 11(c)(5)(A)).

"Rule 11(c) provides . . . that '[i]f . . . the court determines that subdivision (b)

has been violated, the court may . . . impose an appropriate sanction. . . . '" Perez v. Posse

Comitatus, 373 F.3d 321, 325 (2d Cir. 2004) (quoting Fed. R. Civ. P. 11(c)) (alterations in

original) (emphasis omitted). "The decision whether to impose a sanction for a Rule 11(b)

violation is thus committed to the district court's discretion." Id. "The Second Circuit has

cautioned that Rule 11 sanctions should be 'made with restraint.'" Lorber v. Winston, 993 F.

Supp. 2d 250, 253 (E.D.N.Y. 2014) (quoting Schlaifer Nance & Co., Inc. v. Estate of Warhol,

194 F.3d 323, 333 (2d Cir. 1999)). "[I]n imposing [R]ule 11 sanctions, the court is to . . . resolve

all doubts in favor of the signer." Oliveri v. Thompson, 803 F.2d 1265, 1275 (2d Cir. 1986).

39

Moreover, "'Rule 11 neither penalizes overstatement nor authorizes an overly literal reading of each factual statement.'" Kiobel v. Millson, 592 F.3d 78, 83 (2d Cir. 2010) (quoting Navarro-Ayala v. Hernandez-Colon, 3 F.3d 464, 467 (1st Cir. 1993)).  Sanctions under Rule 11 are inappropriate for "minor, inconsequential violations of the standards prescribed by subdivision (b)." Fed. R. Civ. P. 11 Advisory Committee Note. "A statement of fact can give rise to the imposition of sanctions only when the 'particular [factual] allegation is utterly lacking in support.'" Kiobel, 592 F.3d at 81 (quoting Storey v. Cello Holdings, L.L.C., 347 F.3d 370, 388 (2d Cir. 2003)).

"Another basis for sanctions lies in 28 U.S.C. § 1927." United States v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am., AFL-CIO, 948 F.2d 1338, 1344 (2d Cir. 1991). Under this section, "[a]ny attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927. "To impose sanctions under [this section], a court must find clear evidence that (1) the offending party's claims were entirely without color, and (2) the claims were brought in bad faith – that is, 'motivated by improper purposes such as harassment or delay.'" Eisemann v. Greene, 204 F.3d 393, 396 (2d Cir. 2000) (quoting Schlaifer Nance & Co., 194 F.3d at 336). "By its terms, § 1927 looks to unreasonable and vexatious multiplications of proceedings[,] and it imposes an obligation on attorneys throughout the entire litigation to avoid dilatory tactics." Int'l Bhd., 948 F.2d at 1345. The Second Circuit has "held that 'an award under § 1927 is proper when the attorney's actions are so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose such as delay.'" Id. (quoting Oliveri, 803

F.2d at 1273). "In contrast with sanctions under Rule 11, awards pursuant to § 1927 may be imposed only against the offending attorney; clients may not be saddled with such awards." Id.

Here, Mir's motions for sanctions are meritless. The legal arguments presented in Defendants' motions to dismiss are not frivolous or harassing. Indeed, they are meritorious, and have led to the dismissal of all of Mir's claims. As to the alleged misrepresentations of fact, this Court finds that the Defendants' factual statements are not "utterly lacking in support." Kiobel, 592 F.3d at 81 (quotation omitted). As to each alleged falsehood, the Defendants have demonstrated at least some basis in fact. See Def. Br. (Dkt. No. 68) at 9-13; Def. Br. (Dkt. No. 73) at 2-9. Accordingly, Mir's motions for sanctions will be denied.

## CONCLUSION

For the reasons stated above, Defendants' motions to dismiss (Dkt. Nos. 30, 37, 39) are granted, and Mir's motions for sanctions (Dkt. Nos. 56, 58) are denied. The Clerk of the Court is directed to terminate the motions (Dkt. Nos. 30, 37, 39, 56, 58), to enter judgment for the Defendants, and to close this case. The Clerk is further directed to mail a certified copy of this Order to pro se Plaintiff Jehan Zeb Mir at 417 Via Anita, Redondo Beach, CA 90277.

Dated: New York, New York
       March 26, 2015

SO ORDERED.

Paul G. Gardephe
United States District Judge

41